[Civ. No. 3957. Second Appellate District, Division One.—October 24, 1922.]

UNA N. HOPKINS (a Widow), Respondent, v. LOUIS C. HELLER, Appellant.

[1] PHYSICIANS AND SURGEONS — SPECIALIST — DEGREE OF CARE.—One who holds himself out as a specialist in the treatment of a certain organ, injury, or disease is bound to bring to the aid of one so employing him that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury, or disease, its diagnosis and its treatment, in the same general locality, having regard to the state of scientific knowledge at the time.

[2] ID.—PERFORMANCE OF OPERATION — SUBSEQUENT CARE.—When the physician takes charge of a case and is employed to attend a patient, his employment, as well as the relation of physician and patient, continues until ended by consent of the parties, or revoked by the dismissal of the physician, or until his services are no longer needed; and when he performs an operation, not only must he use reasonable and ordinary care and skill in its performance, but also in the subsequent treatment of the case; and it is his duty to give the patient such attention after the operation as the necessity of the case demands, in the absence of any special agreement limiting the services or reasonable notice to the patient.

[3] ID.—EXTRACTION OF TOOTH—NEGLIGENCE—PLEADING—FINDINGS—JUDGMENT—APPEAL.—On appeal from a judgment in favor of the plaintiff in an action for damages for injuries alleged to have resulted from negligence of the defendant in extracting a tooth of the plaintiff, the judgment will not be sustained upon the theory that the defendant was guilty of negligence in his treatment of the patient subsequent to the extraction of the tooth, where the only negligence pleaded or found by the trial court was to the

---

1. Degree of skill and care required of physicians and surgeons, notes, 1 Ann. Cas. 21; 1 Ann. Cas. 306; 14 Ann. Cas. 605; 37 L. R. A. 830; 20 L. R. A. (N. S.) 1030.

effect that defendant was guilty of negligence in his manner of extracting the tooth.

[4] ID. — BURDEN OF PROOF — INSUFFICIENT EVIDENCE. — In such an action, the burden of proof resting upon the plaintiff requires that the evidence of negligence proximately causing the injury be evidence which leads—not merely wavers—toward the fact sought to be proved; and if it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for.

[5] ID.—EXTRACTION OF TOOTH—INJURY TO PATIENT—LIABILITY OF DENTIST.—A dentist is not a warrantor against misfortune, and he is not liable for injuries suffered by a patient resulting from an operation whereby a tooth is extracted, unless such injuries result from negligence in performing that operation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

LeRoy M. Edwards, Gibson, Dunn & Crutcher and Norman S. Sterry for Appellant.

Henry J. Stevens, Lloyd W. Brooke and Cruickshank & Brooke for Respondent.

CONREY, P. J.—Action to recover damages for injuries alleged to have resulted from negligence of the defendant in extracting a tooth of the plaintiff. The defendant appeals from the judgment.

On the ninth day of August, 1918, appellant was a dentist, who at that time and for a number of years prior thereto practiced exclusively the extraction of teeth. The work done on that day by the defendant for the plaintiff consisted in the removal of a small piece of tooth which had been left in the upper left jaw from a tooth that had been extracted, and in the extraction of the wisdom tooth in the lower left jaw. The alleged negligence relates to the operation of extracting the wisdom tooth. In the original complaint it was alleged that defendant negligently and

---

5. Duty and liability of dentist to patient, notes, **Ann. Cas.** 1914A, 273; **Ann. Cas.** 1918C, 1190.

carelessly failed to take or cause to be taken any X-ray photograph of the said tooth, or to request the plaintiff to have one taken, prior to the extraction of the tooth. The finding of the court was that no X-ray photograph of said tooth was taken by the defendant, or caused to be taken by him, prior to such extraction, but that the defendant did not negligently or carelessly fail to take, or cause to be taken, an X-ray photograph of said tooth prior to the extraction thereof. That element of the case, therefore, is removed from consideration on this appeal.

The remaining charge of negligence, as stated in paragraph V of the complaint, at the time of the trial and submission of the cause for decision, was "that said defendant extracted the said wisdom tooth of the plaintiff in a negligent and careless manner, and negligently, carelessly and unskillfully bored into and injured the jaw bone, and the nerve in the jaw bone, of the plaintiff, and fractured the jaw bone of the plaintiff." After submission of the cause, it was ordered that the complaint be amended "to conform to the proof," and thereupon paragraph V was amended to read as follows: "That the defendant extracted the said wisdom tooth in the lower left jaw of plaintiff in a negligent and careless 'manner and in so extracting the said tooth defendant carelessly and negligently injured the said lower left jaw of plaintiff and the inferior dental nerve therein"; and the court so found.

It is contended by appellant that there is no evidence proving or tending to prove that the defendant extracted said tooth in a negligent or careless manner, or that in so extracting said tooth the defendant carelessly or negligently injured the lower left jaw or the said inferior dental nerve. Upon the 7th of August respondent arranged with appellant to have this tooth extraction done on the morning of August 9th. On the 9th she came, accompanied by a friend. But this friend, Miss Garbutt, did not remain in the operating-room. An anesthetic was administered by Mrs. Heller, wife of the defendant, who was his assistant. Doctor Bullard, the physician of the plaintiff, was present at her request for the particular purpose of observing the patient during the period of anesthesia. There were no other witnesses to the operation, which occupied about one and one-half hours.

59 Cal. App.—29

Defendant, called as a witness for the plaintiff, described the procedure of the operation substantially as follows: He first sterilized the area and then released the tissues around the tooth by loosening those tissues so as to avoid laceration of them with the forceps. He then took hold of the tooth with the forceps, and obtained only "a lateral movement from side to side." Not being able to remove the tooth, he used an instrument called an elevator. Not gaining success with the elevator, he applied the forceps again, and in so doing the crown portion of the tooth broke off. He then used a burr and burred around the back and side of the tooth. This was for the purpose of removing the process next to the tooth. This he continued to do from time to time "and then used the elevator to assist it, change of elevators." When he first applied the forceps, he ascertained that the operation was a difficult one on account of the resistance, which he attributed to the density of the process there, which made it necessary to use the burr. He decided that it was the bone which was holding the tooth in its socket—"the back part of the tooth, and back and side of the tooth, which is the densest part of the process." Finally, he succeeded in extracting the tooth, all of which came out without further breaking. He then smoothed the edges of the cavity and washed the socket with phenol-sodique, aconite, and iodine.

On recovering from the anesthetic, plaintiff was in very great agony in the left lower jaw and her face was badly swollen. Accompanied by Miss Garbutt and Doctor Bullard, she returned to her home in Pasadena. The swelling increased, and did not begin to decrease until after three or four days. There was a drawing sensation and extreme numbness after the acuteness of the first pain had gone. These and other symptoms of distress are fully described in the testimony of plaintiff. At intervals of a few days during several weeks following the operation, the plaintiff visited the defendant for treatment at his office, and he applied a mixture of aconite and iodine. At those times she complained of the soreness and pain. After about three weeks the plaintiff suggested that she thought there must be something still in the cavity and she thought she might have an X-ray of it. The defendant approved this suggestion, and thereupon the plaintiff obtained from one Doctor Wake an

X-ray of her face. According to the testimony of the plaintiff, she again visited the office of the defendant, who told her that his wife had talked with Doctor Wake over the telephone relative to the plates, and that Doctor Wake said it was all right. ''Doctor Heller did not say that he had seen the plates himself. He did not ask me if I had brought the plate. I told Doctor Heller that the pain in my face continued, and that it did not improve, and he said he did not know why it continued to pain me. He said he thought he would go down in and see about it. He put on a local anesthetic and went down in to see if he could determine the cause. I do not know whether he made any efforts to see the plate before he did this. He did not ask me to get the plate. He put on a local anesthetic and went down into the cavity with his instrument and probed the wound. He took out clots of blood. I think the wound had healed at that time. He did not state what the significance was, if anything, of the clots of blood. He said he couldn't see why my jaw continued to hurt. He said the jaw looked all right to him in every way, and he couldn't see why it continued to hurt me. He said he was sure it was going to be all right very soon; it must be. He said I might return again if it continued to bother me. I made another visit to his office. He reiterated that he did not see why it did not get better, and he said if he were in my place—that there was no reason why it shouldn't be better—if he were in my place he would go back to the city and try and forget it; but there was no reason why it shouldn't be better. He said that sometimes it took a long time for a nerve to repair itself. He gave me no particular treatment upon this occasion. He gave me no directions, except to keep it clean, to wash out my face. I followed his directions absolutely. After the visit at which Doctor Heller opened up the wound and probed it I continued to visit his office every few days until the middle of October. I went to his office as often as he requested me to and the last visit was about the middle of October.''

In June, 1919, plaintiff consulted Doctor Butler, of Pasadena, a dentist. On his advice, and after some additional radiographs of the jaw had been taken, an operation was performed by Doctor Warren, a dental surgeon, assisted by Doctor Butler. The two teeth immediately forward of the

wisdom tooth which had been removed by Doctor Heller were extracted by Doctor Warren, who then proceeded to operate upon the bone of the jaw in order to remove a condition of necrosis which had been indicated by the X-ray plates. After scraping the bone and cleaning out the wound, he applied the customary antiseptic treatments and closed up the wound. This operation resulted in very substantial relief to the patient, although the evidence shows that she had not entirely recovered at the time of the trial of this action in February, 1920.

[1] The rule concerning the degree of care required of the defendant as a specialist in his branch of dentistry is correctly set forth by counsel for respondent in their quotation from Ann. Cas. 1915D, page 1124, where it is said: ''One who holds himself out as a specialist in the treatment of a certain organ, injury or disease, is bound to bring to the aid of one so employing him, that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury or disease, its diagnosis and its treatment, in the same general locality, having regard to the state of scientific knowledge at the time.'' [2] The scope and extent of the duty of a physician or surgeon is accurately set forth in the statement quoted by counsel from 21 R. C. L., page 389, as follows: ''When the physician takes charge of a case and is employed to attend a patient, his employment, as well as the relation of physician and patient, continues until ended by the consent of the parties, or revoked by the dismissal of the physician, or until his services are no longer needed. For example, when a surgeon performs an operation, not only must he use reasonable and ordinary care and skill in its performance, but also in the subsequent treatment of the case. It is his duty to give the patient such attention after the operation as the necessity of the case demands, in the absence of any special agreement limiting the service or reasonable notice to the patient.'' [3] Basing their argument upon these authorities, counsel for respondent have made some suggestions that appellant not only was negligent in performing the operation, but that he was guilty of further negligence in his subsequent treatment of the patient, and particularly in the removal of a blood clot in the course of one of those treatments, and that the evidence so

shows. But this argument is answered by the fact that the only finding of negligence that can be found in the findings of fact is the single finding to the effect that the defendant was guilty of negligence in his manner of extracting the tooth. It was in so extracting the tooth that the defendant was found to have carelessly and negligently injured the jaw of the plaintiff and the inferior dental nerve therein. That this is the limit of the negligence upon which the judgment rests is further emphasized by the fact that the complaint did not, even after the amendment, allege any negligence subsequent to the extraction of the tooth. Therefore, we are brought back to the question whether or not appellant was guilty of negligence and of negligently injuring said jaw and dental nerve in the course of the operation of extracting the tooth. This question must be answered by searching the record for some evidence showing how such negligence occurred, or tending to prove facts from which the negligence affirmed by the finding may be inferred. According to the testimony of the defendant, this wisdom tooth was a normal, fully erupted tooth, and its surface was "on a line with the occlusal surface of the adjoining teeth." According to other witnesses, it was an impacted tooth, not fully erupted, and the surface was not on a line with the surface of the adjoining teeth. We shall assume, in favor of respondent, that the fact was in accordance with the latter alternative. It was in connection with this fact that respondent introduced much testimony to prove her charge of negligence of appellant in failing to obtain an X-ray photograph of the tooth prior to its extraction. But this becomes unimportant, since the court found that appellant was not negligent in that particular. This finding implies the further determination that the method of procedure adopted by appellant for removal of the tooth was not shown to be different from that which he reasonably might have used after inspection of such X-ray photograph if one had been taken.

There does not appear to be any evidence that the method of procedure or technique of the operation as performed by appellant was different from that which should have been used by a skillful and careful operator in the removal of that tooth. If appellant was guilty of negligence in the operation, it was not in the choice of instruments used, nor

in the order in which they were applied. If there was negligence, it must have been by some unskillful or careless use of the instruments whereby an injury was caused. Here again our attention recurs to the fact that under direction of the court, respondent withdrew her allegation that appellant bored into or fractured the jaw-bone. And we do not doubt that this allegation was properly withdrawn, since there is no evidence by which it could have been sustained.

It remains true, however, that respondent suffered extremely during the days and weeks following the extraction of her tooth, and that inflammation and other symptoms of disease followed, as described in her testimony. It further appears that the X-ray photographs afterward made showed the development of a condition of necrosis in the jaw-bone, and that during the surgical operation which followed, the facts indicated by these photographs were verified. But in order to sustain the finding it must further appear that these unhappy conditions were caused by negligence of the defendant. If there be evidence from which the court could fairly infer that the injury resulted from the operation of extracting the wisdom tooth, and further tending to prove that without negligence in the performance of the operation the injury would not have occurred, then such evidence is sufficient to sustain the finding of the court. But the evidence must be such that more than a suspicion or surmise arises therefrom. [4] The burden of proof resting upon the plaintiff requires that the evidence of negligence proximately causing the injury be evidence which leads—not merely wavers—toward the fact sought to be proved. "If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for." (*Wilbur* v. *Emergency Hospital Assn.*, 27 Cal. App. 751, 759 [151 Pac. 155, 158].)

The facts that shortly after August 9, 1918, necrosis of the jaw-bone of the plaintiff had set in, and that this necrosis increased until the time of the performance of a curetting operation in June, 1919, were established by the X-ray photographs, supplemented by the testimony of Doctors Warren and Butler, and Doctor Parker, witnesses called by the plaintiff. In response to a hypothetical question based upon evi-

dence relating to the symptoms following the extraction of plaintiff's tooth in the manner stated, Doctor Warren said that he would attribute those symptoms to interference with the mandibular nerve—the nerve which goes through the inferior dental canal. Being then asked to say whether, in his opinion, the necrosis, assuming that it did not exist before, was, to any extent, caused by such supposed injury, he replied that it might, but it would be hard to say that it was; that there is a large number of causes for those things, such as infection, or traumatic conditions. "In the majority of cases necrosis is caused by infection more than any one cause. Other causes are lack of nutrition." He declined to give a more definite opinion as to the cause of the necrosis. The infection, he said, most probably would be through the socket of the tooth, and might occur without fault of the operator.

Doctor Parker, in response to a hypothetical question, attributed the necrosis to "mechanical injury." Further on it appeared that this referred to injury to the inferior dental nerve. This nerve, as the testimony shows, enters the jaw back of the wisdom tooth, and proceeds along through the inferior dental canal, below the roots of the teeth. There is no evidence that the defendant drilled down to that canal. It positively appears that he did not do so. If there was any mechanical injury to that nerve, it must have occurred through the severance of the tooth when it was drawn out, or through some pressure occurring in the course of the work done by defendant during the operation.

Doctor Ross Moore, a nerve specialist called by the plaintiff as a witness, in answer to a hypothetical question stating the supposed case here and inquiring about the cause of the pain or the sensation of creeping and numbness in the jaw of the plaintiff, stated that in his opinion this condition was due to an injury to the nerve which supplies sensation to the teeth of the lower jaw on the left side. Doctor Moore did not believe that numbness, on the part of the face indicated, following the extraction of a wisdom tooth, would last for a year and a half or two years afterward unless there had been a good deal of trouble, a good deal more inflammation or inflammatory reaction or bruising than the average extraction. If such numbness did come after the

simple removal, after injury to the nerve, he would expect it to clear up within a few days or a few weeks.

The evidence shows that the time occupied in extraction of the wisdom tooth was unusually long, and that this extension of time resulted from the density of the process and from the fact that the crown of the tooth broke off. This made necessary the operation of burring around the tooth, to loosen the adhesion of the tooth to the adjacent process, and make better leverage for use of the elevator. All of the witnesses agreed that the breaking of a crown from a tooth is not uncommon, and frequently occurs without fault of the dentist. We have examined the testimony at length, and particularly the testimony relied upon by counsel for respondent, but we have not found any evidence tending to prove that any act done by the defendant in extracting the plaintiff's tooth was negligently done, or that he omitted to do anything therein that in the exercise of due care he should have done. **[5]** The injuries suffered by the plaintiff resulted from the operation whereby the tooth was extracted. But the evidence is insufficient to prove that they resulted from negligence of the defendant in performing that operation. To sustain the judgment without proof of such negligence would be to hold the defendant as a warrantor against misfortune. But he is not thus bound. (*Perkins* v. *Trueblood,* 180 Cal. 437 [181 Pac. 642].)

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1922.

All the Justices present concurred.