[Civ. No. 4777. Second Appellate District, Division Two.—April 25, 1928.]

ROBERT G. TAYLOR, Respondent, v. THOMAS J. DE VAUGHN, Appellant.

John C. Miles for Appellant.

Munson T. Case and C. R. Bainbridge for Respondent.

HAZLETT, J., *pro tem.*—Plaintiff recovered judgment against defendant for $850 damages and costs of suit on

account of the alleged malpractice of defendant, a physician and surgeon. Plaintiff had suffered a transverse fracture of the middle third of his left femur, defendant reduced the fracture, and the trial court held that he failed to give plaintiff the usual and necessary surgical care and attention after the reduction, which failure made necessary an operation upon the broken limb and a resetting of the bone, to plaintiff's damage.

Defendant made a motion for a new trial, which was denied, and he appeals from the order denying the motion and from the judgment. The order denying the new trial is not appealable (Code Civ. Proc., sec. 963).

The record shows without conflict, except as below specially mentioned, and the court found, the following facts:

Plaintiff was a little less than eight years old when his injury occurred; defendant was employed by plaintiff's mother to reduce the fracture and care for the injured boy afterward; the boy was taken to the Corby Hospital at Huntington Park, where defendant, assisted by a Doctor Preston, reduced the fracture, exercising reasonable care and skill in so doing, and in applying splints, plaster of Paris cast and extension of the limb with weights; the boy was kept in bed and the endeavor was to have him lie on his back, but about three days after the fracture was reduced he turned over on his side or on his face, which may have caused the ends of the broken bone to lose their proper positions; prior to the reduction of the fracture defendant took X-ray pictures of the limb, but took no other such pictures until about 15 days thereafter; very soon after the boy turned over the mother requested defendant to have X-ray pictures taken to determine whether the ends of the broken bone had lost their apposition thereby, but defendant said that it was not necessary; the mother was a working woman and was delayed in raising money with which to pay the hospital and doctors' charges, and eight days after the limb was set and pursuant to defendant's consent, she moved the boy from the hospital, but defendant gave her no instructions as to his care; she took him to her own home and a short time later moved him to another private house, and he was kept in bed with weights attached

to his limb (there is a conflict in the evidence as to whether defendant consented that the boy be removed to any place other than another hospital); while being so moved the boy was carried in arms several times, which might have caused the broken bone ends to move out of place; after the boy was taken from the hospital the mother observed that he suffered cramps in his injured limb, and so advised defendant; on the thirteenth day after the limb was set defendant again examined the boy, he was asked by the mother to have X-ray pictures of the limb taken and he said it was not necessary as the boy was getting along all right, but two days later defendant had such pictures taken and they disclosed that the ends of the broken bone were misplaced and had slipped past each other, shortening the leg about two and one-half inches; and on the nineteenth day after the fracture was set one Doctor Nelson, who was employed by the mother, operated on the limb. He opened it and found very firm callouses over the ends of the bone at the place of fracture and connecting the broken portions of the bone, the callouses being of the character which required two to four weeks' time to form, and he found it necessary to chisel away the callouses, to pry the broken portions of the bone apart and to reset the broken bone. This operation was very dangerous but necessary.

Defendant and Dr. Preston testified that shortly after the boy had turned over they measured both his legs with steel-tape, measuring from the anterior superior spine to the internal malleolus (ankle joint) and found the legs the same length, the foot in proper position and the injured limb straight, and that thereafter, while the boy was in the hospital, he suffered little pain; and defendant further testified that he refrained from taking X-ray pictures after he reduced the fracture, for fear of injury to the boy.

Other surgeons testified that such measurement of the limbs is not a sufficient guide to determine whether there has been a slipping or side movement of the broken bone ends and that there may be a difference of one-half inch to one inch in the lengths of the two limbs which will not be discovered by measurement alone, as the tipping of the pelvis may mislead; that the only sure way to determine whether such a fracture has been properly reduced is to

follow with X-ray pictures, and that such is the only sure practice and is the general practice among skillful physicians in Los Angeles County, where the occurrences herein mentioned took place; and that when the X-ray is properly used for that purpose there is no danger to the patient. Dr. Nelson also testified that the splints and plaster cast which had been originally placed on the limb would not have prevented movement of the limb or a slipping of the broken bone ends.

The court also found that defendant was negligent and failed to exercise reasonable skill in the following particulars: He failed to take X-ray pictures to ascertain whether the fracture had been properly reduced, or after the boy turned over or after the boy was moved to determine whether any injury had been done by the turning or moving; he failed to give instructions to lessen the danger of displacing the fractured bone by the moving of the boy from the hospital; he failed to give the boy his personal attention between the moving and his visit to the boy five days later; and he did not have such pictures taken until repeated demands and requests had been made by the mother therefor and not by reason of correct or reasonably careful diagnosis.

The principal contentions made by appellant are that the evidence is insufficient to support any findings or judgment predicated upon negligence on the part of defendant, and that it does not appear that any damage was suffered by plaintiff from the acts of defendant which the court found constituted negligence on his part.

The main questions for consideration are whether the relation of surgeon and patient existed between defendant and plaintiff at the time subsequent to the reduction of the fracture when the broken ends of the bone lost their apposition or for any period following that time, and, if the relation continued, whether defendant exercised that degree of care of the boy required of him as a surgeon, following the reduction.

The general rules covering those questions are announced in *Hopkins* v. *Heller,* 59 Cal. App. 447, 452 [210 Pac. 975], and in *Perkins* v. *Trueblood,* 180 Cal. 437, 441, 443 [181 Pac. 642]. In the Hopkins case the court announced that "When a physician takes charge of a case and is employed

to attend a patient, his employment, as well as the relation of physician and patient, continues until ended by the consent of the parties, or revoked by the dismissal of the physician, or until his services are no longer needed. For example, when a surgeon performs an operation, not only must he use reasonable and ordinary care and skill in its performance, but also in the subsequent treatment of the case. It is his duty to give the patient such attention after the operation as the necessity of the case demands, in the absence of any special agreement limiting the service or reasonable notice to the patient.'' In the Perkins case the court said that ''The difficulties and uncertainties in the practice of medicine and surgery are such that no practitioner can be required to guarantee results and all the law demands is that he bring and apply to the case in hand that degree of skill, care, knowledge and attention ordinarily possessed and exercised by practitioners of the medical profession under like circumstances, . . . Negligence on the part of a physician consists in his doing something which he should not have done, or in omitting to do something which he should have done, . . . That as to what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts, and can be established only by their testimony.''

Counsel cite a large number of decisions from other jurisdictions, but as, in general, they merely adhere to or elaborate upon the foregoing rules announced by our own courts, they are not cited in this opinion.

▪ Applying the rules above announced to the facts in this case, it satisfactorily appears that the relation of surgeon and patient existed between defendant and plaintiff until two or three days before Doctor Nelson operated and found the callouses which were fourteen to thirty days old, and that the broken portions of the bone had lost their apposition and slipped by each other at least ten days before defendant was discharged from the case, and, as testified by several reputable surgeons, that good surgeons practicing in Los Angeles County invariably use the X-ray to verify their work in reducing fractures, and particularly when reducing a fracture of the femur they take X-ray pictures from time to time thereafter until union oc-

curs, to determine whether any slipping at the fracture has occurred, and that the necessities of such cases require the use of the X-ray.

The findings of the trial court have ample support in the evidence. Defendant was remiss in his duty to plaintiff in failing to verify his work by the use of the X-ray after he reduced the fracture, and in failing to give the boy that degree of attention which the conditions required. There is substantial evidence sustaining the view that the operation performed by Doctor Nelson would not have been necessary had defendant exercised that degree of care and skill ordinarily used by surgeons in Los Angeles County. Plaintiff suffered damage by reason of the negligence of defendant.

Other contentions are made by appellant, to the effect that the findings of negligence are not supported by any sufficient allegations of negligence in plaintiff's second amended complaint, and that the court erroneously admitted and rejected evidence. None of these contentions has merit. Plaintiff's pleading alleges the acts of negligence fairly and clearly and the court committed no prejudicial error in receiving or rejecting evidence.

The judgment is affirmed. The appeal from the order denying a new trial is dismissed.

Works, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1928.

All the Justices concurred.