Filed 8/26/24; certified for publication 9/10/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DANIEL MCCURRY et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>INDER SINGH,<br><br>Defendant and Respondent. | C098433<br><br>(Super. Ct. No. 34-2020-00276858-CU-MM-GDS) |

Summary judgment in favor of a defendant in a professional malpractice action is proper where the plaintiff does not show that the defendant owed the plaintiff a legal duty of care.  (*Armato v. Baden* (1999) 71 Cal.App.4th 885, 893.)  A physician does not owe a duty of care until a physician-patient relationship exists.  (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 235 (*Alexander*).)

Plaintiffs and siblings Daniel McCurry and Carie Powell sued defendant Dr. Inder Singh for malpractice, contending he violated a duty of care when he refused to treat their

1

mother, decedent Carol McCurry. The trial court granted summary judgment in favor of Dr. Singh. The court ruled that Dr. Singh did not owe decedent a duty of care because he did not affirmatively treat her and thus was not in a physician-patient relationship with her.

Plaintiffs contend the trial court erred. We disagree and affirm the judgment.

UNDISPUTED FACTS AND HISTORY OF THE PROCEEDINGS

On March 9, 2019, at 7:28 a.m., decedent was brought by ambulance to the emergency department at Methodist Hospital. She had a history of chronic obstructive pulmonary disease, and she presented with shortness of breath. A chest x-ray and a CT scan, however, indicated decedent had an aortic dissection. She quickly decompressed and was intubated.

Dr. Michael Brandon, the treating emergency physician, worked to have decedent transferred out as quickly as possible. Two cardiovascular surgeons he consulted with believed the dissection was not the most pressing issue, so Dr. Brandon focused on the fact that, given changes in decedent's electrocardiogram (EKG) and other symptoms, decedent was most likely having a heart attack (myocardial infarction). He believed decedent needed a cardiac catheterization, a procedure that Methodist Hospital did not have the capability to perform.

Dr. Brandon spoke with defendant, Dr. Singh, an on-call interventional cardiologist at Mercy General Hospital. Dr. Singh initially agreed that decedent needed acute catheterization, but upon learning of decedent's elevated creatinine and other conditions, he concluded decedent would not be a candidate for the procedure. He offered to consult on decedent's case if she were transferred to Mercy General. But before decedent could be transferred and Dr. Singh could consult on the case, an intensivist (an ICU doctor) had to accept decedent's transfer. Dr. Singh never agreed to decedent's transfer.

Dr. Brandon spoke with Dr. Jamal Sadik, a Mercy General intensivist. Dr. Sadik initially agreed to accept decedent's transfer provided interventional cardiology was involved. But he changed his mind after learning that Dr. Singh did not plan on performing a catheterization on decedent. Dr. Sadik could not accept the transfer if, as a result of Dr. Singh's decision, decedent would not receive any interventions at Mercy General that Methodist Hospital could not provide.

Dr. Brandon submitted transfer requests to Sutter, UC Davis, and Kaiser, but each facility declined to accept the transfer. Dr. Brandon then consulted with Methodist Hospital's chief medical officer and, ultimately, with Mercy General's chief medical officer. At around 6:15 p.m. that evening, Dr. Brandon learned that Dr. Sadik had agreed to the transfer and to admit decedent to Mercy General. Unfortunately, decedent died while awaiting transfer.

Plaintiffs, two of decedent's adult children, brought this action against Dr. Singh, Dignity Health, and several other defendants for wrongful death medical negligence. (Dignity Health is not a party to this appeal.) Plaintiffs allege Dr. Singh was negligent in not accepting decedent's transfer under the circumstances and thereby caused her death.

Dr. Singh moved for summary judgment. He contended he owed no duty of care to decedent because no physician-patient relationship existed between them.

The trial court granted the motion and dismissed the complaint as against Dr. Singh. It determined as a matter of law that Dr. Singh owed no duty of care to decedent because he did not affirmatively treat her and thus no physician-patient relationship existed between her and Dr. Singh.

DISCUSSION

I

*Standard of Review*

We review an order granting summary judgment de novo. (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.) We consider all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. (*Ibid*.)

To establish the action has no merit, a defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) We view the evidence in the light most favorable to plaintiffs as the losing parties, liberally construing their evidentiary submission while strictly scrutinizing Dr. Singh's own showing. We resolve any evidentiary doubts or ambiguities in plaintiffs' favor. (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768.) We accept as true the facts shown by plaintiffs' evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 856.)

"Summary judgment is appropriate only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 850, 856.)" (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158.)

4

## II

### *Duty of Care*

Liability for malpractice and negligence is based upon the defendant's breach of a legal duty of care. (*Rainer v. Grossman* (1973) 31 Cal.App.3d 539, 542.) Whether a defendant owes a duty of care is a question of law that is determined on a case-by-case basis. (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588; *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1610.)

A physician's duty of care to a patient does not arise until a physician-patient relationship is established. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1075; *Alexander, supra*, 23 Cal.App.5th at p. 235.) " '[T]he relationship gives rise to the duty of care.' " (*Burgess*, at p. 1075, quoting 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 776, p. 116.) Absent this special relationship, a physician is under no duty to take affirmative action to assist or protect another, " 'no matter how great the danger in which the other is placed, or how easily he could be rescued.' " (*Armato v. Baden, supra*, 71 Cal.App.4th at p. 895; *Agnew v. Parks* (1959) 172 Cal.App.2d 756, 764.)

Plaintiffs contend a physician-patient relationship existed between Dr. Singh and decedent because Dr. Singh "affirmatively participated" in decedent's medical care. He did so by being consulted by Dr. Brandon about the proper management of decedent's medical care due to his medical specialty and as the on-call interventional cardiologist, being asked to provide medical care, and determining decedent was not a candidate for cardiac catheterization. Plaintiffs also assert it was foreseeable that decedent would suffer great harm or death if she did not receive a cardiac catheterization.

Under California law, a physician-patient relationship arises as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill. (*Keene v. Wiggins* (1977) 69 Cal.App.3d 308, 313; *McNamara v. Emmons* (1939) 36 Cal.App.2d 199, 204.) Generally, the agreement comes into existence " '[w]hen the

5

physician takes charge of a case and is employed to attend a patient[.]' " (*Hopkins v. Heller* (1922) 59 Cal.App. 447, 452.)  The relationship does not arise when the physician "does not affirmatively treat or directly advise the patient." (*Alexander, supra*, 23 Cal.App.5th at p. 235.)

This special relationship is similar if not identical to the physician-patient relationship whose communications are protected by evidentiary privilege.  (Evid. Code, § 990 et seq.)  In a hospital, that relationship arises between the patient and the doctors who examine her, diagnose her, and/or furnish her treatment.  (*Hale v. Superior Court* (1994) 28 Cal.App.4th 1421, 1423.)

Summarizing the case law on this issue, one commentator has stated, "The relationship . . . comes into existence when the patient, or someone acting for the patient, solicits the practitioner's services and the latter knowingly consents to, and begins consensually to act for, the benefit of the patient."  (1 McDonald, Cal. Medical Malpractice Law & Practice (2023 ed.) § 1:2, fn. omitted [available on Westlaw].)  A physician is under no obligation to enter into an agreement to treat a patient.  (*McNamara v. Emmons, supra*, 36 Cal.App.2d at p. 204.)

In contrast, "[s]everal courts have found a physician-patient relationship does not exist where the physician does not affirmatively treat or directly advise the patient. (*Rainer v. Grossman, [supra]*, 31 Cal.App.3d [at pp.] 542-543 [holding a physician and professor of medicine did not have a physician-patient relationship under circumstances in which he recommended to a treating physician during a lecture that the treating physician's patient undergo surgery]; *Clarke v. Hoek* (1985) 174 Cal.App.3d 208, 211 [holding a physician who acted as a proctor during surgery to evaluate surgeon's competence did not have a physician-patient relationship with patient undergoing surgery]; *Keene v. Wiggins, supra*, 69 Cal.App.3d at pp. 310-311 [holding no physician-patient relationship [was created] where physician examined plaintiff for purpose of rating the plaintiff's injury for employer's insurance carrier in workers' compensation

proceeding]; *Felton v. Schaeffer* (1991) 229 Cal.App.3d 229, 234 [holding no physician-patient relationship [was created] where defendants evaluated plaintiff solely for the purpose of a preemployment physical examination].)" (*Alexander, supra*, 23 Cal.App.5th at p. 235.)

In *Alexander*, the Court of Appeal determined that a physician-patient relationship did not exist between a patient and a team of volunteer physicians who provided recommendations when a treating physician's plan of care conflicted with the patient's wishes. Although the doctors met at the patient's bedside, they did not treat the patient. Their role was limited to reviewing the patient's records, considering the impressions of the patient's consulting and treating physicians, and observing the patient so as to make recommendations that the patient's treating physicians could accept or reject. (*Alexander, supra*, 23 Cal.App.5th at p. 236.) The "critical inquiry is the nature of the relationship and contact between the physician and patient," and the team's actions were insufficient to give rise to a physician-patient relationship and the associated duty of care. (*Ibid.*)

From this discussion of authority, we conclude Dr. Singh's consultation with Dr. Brandon and his refusal to accept the decedent's transfer did not create a physician-patient relationship between Dr. Singh and decedent. Dr. Singh never took charge of decedent's case or was employed to attend to her. He never examined her, furnished her treatment, or advised her or her physicians. There was no relationship and no contract between Dr. Singh and decedent.

Plaintiffs cite no California authority to support their contention that an on-call specialist's decision not to provide medical care to another doctor's patient based on medical considerations, without assuming any kind of responsibility for the requested care or affirmatively engaging in caring for the patient, creates a physician-patient relationship for purposes of medical malpractice law, and we have found none. Nonetheless, we are not convinced that Dr. Singh's "participation" in decedent's care by refusing to care for her created a physician-patient relationship. It is true that based on

Dr. Brandon's description of decedent's condition, Dr. Singh reached an opinion about whether to treat decedent, but he determined not to treat her. His concluding not to treat her did not create a physician-patient relationship because he did not affirmatively accept any responsibility for her care.

Plaintiffs rely on an Arizona case, *Diggs v. Arizona Cardiologists, Ltd.* (2000) 198 Ariz. 198 [8 P.3d 386] (*Diggs*), to support their argument that the extent of Dr. Singh's participation created a physician-patient relationship between he and decedent. In *Diggs*, the patient was suffering severe chest pains and was taken by paramedics to the hospital. The treating emergency physician examined the patient and ordered an EKG and an echocardiogram. Although the EKG indicated the patient was suffering from myocardial infarction, the physician believed the patient was suffering from pericarditis, inflammation of the sac around the heart. The physician was not trained to interpret echocardiograms. (*Id*. at p. 199.)

The physician spoke with a cardiologist and described the patient's case. The cardiologist reviewed the EKG results. (*Diggs, supra*, 198 Ariz. at p. 200.) He agreed with the physician that the patient should be discharged. They concluded her pericarditis should be treated with medication and that she should follow up with her family practice physician immediately. The cardiologist also offered to see the patient in 10 days for follow-up care. (*Ibid*.)

The patient died of cardiopulmonary arrest three hours after being discharged. (*Diggs, supra*, 198 Ariz. at p. 200.) Pursuant to hospital practice, another cardiologist later reviewed the patient's EKG and echocardiogram, and the tests confirmed that the patient was suffering from acute myocardial infarction while she was in the emergency department. (*Ibid*.)

The patient's spouse and family members sued the cardiologist for malpractice. (*Diggs, supra*, 198 Ariz. at p. 200.) The trial court granted summary judgment in favor of the cardiologist, concluding there was no contractual physician-patient relationship

between him and the patient. (*Ibid*.) The cardiologist's involvement was limited to an informal consultation that did not give rise to a duty of care. (*Ibid*.)

The Arizona Court of Appeals reversed. It held that the absence of a contractual physician-patient relationship did not preclude the existence of a legal duty of care that could viably arise under any legal theory as a matter of policy. (*Diggs, supra*, 198 Ariz. at pp. 201-202.) The court relied on two tort policies to determine that the cardiologist owed a duty of care to the patient. First, under tort law's principle of preventing future harm, public policy places duties of care on those most capable of preventing harm caused by the intervening negligence of others. (*Id*. at p. 202; see Prosser & Keeton, Torts (5th ed. 1984) § 4, p. 25.)

Second, tort policies also impose a duty of care on one who voluntarily undertakes to render services to another that are necessary for the protection of a third person. The actor is liable to the third person for physical harm resulting from the actor's failure to exercise reasonable care to protect his or her undertaking if, among other possibilities, the actor's failure to exercise reasonable care increases the risk of such harm. (*Id*. at p. 202; Rest.2d Torts, § 324A.)

Applying these policies, the intermediate appellate court held that the cardiologist owed a duty of care to the patient. The cardiologist was in a unique position to prevent future harm to the patient. (*Diggs, supra*, 198 Ariz. at p. 202.) The emergency physician approached him for assistance in making determinations about the patient's medical care which the physician was not fully qualified to make on his own. As between the two doctors, only the cardiologist had the expertise to interpret the echocardiogram, rule out myocardial infarction, and admit the patient to the hospital for further treatment. Given his expertise, he was in the best position to correct any error in the emergency physician's diagnosis. (*Ibid*.)

In addition, the cardiologist voluntarily undertook to provide his expertise to the emergency physician, knowing it was necessary for the protection of the patient and that

9

the physician would rely on it. (*Diggs, supra*, 198 Ariz. at p. 202.) The cardiologist knew that the computer-generated interpretation of the EKG indicated an acute myocardial infarction and that proper interpretation of the EKG required a cardiologist. (*Ibid.*) Yet he confirmed the physician's diagnosis and recommendation, and that by ordering the patient to follow-up with him in 10 days, he implied to the physician that it was safe to discharge the patient. (*Id.* at pp. 202-203.)

His advice significantly altered the patient's treatment and increased the risk of harm to her. (*Diggs, supra*, 198 Ariz. at p. 203.) The physician's reliance on the cardiologist's advice induced the physician to forego other remedies or precautions against that risk. (*Ibid.*) The appellate court concluded that on this record, when the cardiologist rendered his opinions to the physician, he effectively became a provider of medical treatment to the patient. (*Ibid.*)

Plaintiffs contend the circumstances in *Diggs* are almost identical to the facts here. Dr. Singh was consulted in his role as the on-call interventional cardiologist regarding the proper management of decedent's care, and he made "an affirmative 'conclusion' " about decedent's care by refusing her transfer. Plaintiffs assert that, following *Diggs*, a physician-patient relationship arose under these circumstances.

*Diggs* does not square with California law. *Diggs* held that under Arizona law, a duty of care could be imposed on a physician based on various tort principles and policies regardless of whether a contractual physician-patient relationship existed. (*Diggs, supra*, 198 Ariz. at pp. 201-202.) Under California law, however, the physician-patient relationship is what gives rise to the duty of care. (*Burgess, supra*, 2 Cal.4th at p. 1075.) It is the existence of that special relationship that puts the physician in a unique position to protect the patient from injury. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 216.) Indeed, where the relationship exists, tort policies like those advanced in *Diggs* and the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113, serve only to

determine whether exceptions to the duty created by the relationship should be made and not, as *Diggs* held, as sources of that duty. (*Brown*, at pp. 217-221.)

In California, a physician's duty of care to a patient does not arise until a physician-patient relationship is established. (*Burgess, supra*, 2 Cal.4th at p. 1075; *Alexander, supra*, 23 Cal.App.5th at p. 235.) Absent this relationship or other statutory requirement not applicable here, a doctor is under no duty to take affirmative action to assist or protect another person. (*Armato v. Baden, supra*, 71 Cal.App.4th at p. 895.) We thus decline to apply *Diggs* in this appeal.

Because the undisputed facts show that Dr. Singh and the decedent were not in a physician-patient relationship, Dr. Singh did not owe the decedent a legal duty of care as a matter of law. The trial court thus correctly granted summary judgment in his favor.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Dr. Singh. (Cal. Rules of Court, rule 8.278(a).)

_____
HULL, J.

We concur:

_____
EARL, P. J.

_____
ROBIE, J.

11

Filed 9/10/24

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DANIEL MCCURRY et al.,<br><br>　　　　Plaintiffs and Appellants,<br><br>　　v.<br><br>INDER SINGH,<br><br>　　　　Defendant and Respondent. | C098433<br><br>(Super. Ct. No. 34-2020-00276858-CU-MM-GDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

　　　　APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, J.  Affirmed.

　　　　Wilcoxen Callaham, and Michelle C. Jenni for Plaintiffs and Appellants.

　　　　Cole Pedroza, Kenneth R. Pedroza, Cassidy Cole Davenport and Nathan J. Novak; Pollara Law Group, Dominique A. Pollara and Christopher N. Leon for Defendant and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on August 26, 2024, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____

EARL, P. J.


_____

HULL, J.


_____

ROBIE, J.

2