[Civ. No. 1760. Second Appellate District.—January 5, 1916.]

## A. O. HOUGHTON, Respondent, v. C. B. DICKSON, Appellant.

NEGLIGENCE—PHYSICIAN AND SURGEON—DEGREE OF SKILL—IMPLIED CONTRACT.—A physician or surgeon undertaking the treatment of a patient impliedly contracts not only that he possesses that reasonable degree of learning and skill possessed by others of his profession, but that he will use reasonable and ordinary care and skill in the application of such knowledge to accomplish the purpose for which he is employed; and if he possesses such reasonable degree of learning and in the treatment of the patient exercises ordinary care and skill in applying it, he is not liable for the results that follow.

ID.—NEGLIGENT SURGICAL TREATMENT—INSUFFICIENCY OF EVIDENCE.—In this action against a physician and surgeon to recover damages alleged to have been sustained by the plaintiff as the result of negligent surgical treatment of the plaintiff's arm, it is held that the evidence wholly fails to show any lack of care and skill on the part of the defendant in setting and treating the fractured bone of the arm, and that it likewise fails to show when the dislocation of the elbow occurred, or that a physician in the exercise of ordinary care and skill in treating the plaintiff should have discovered the dislocation and treated the same.

ID.—EXERCISE OF REASONABLE SKILL—QUESTION FOR JURY.—A surgeon does not undertake to perform a cure, nor does he undertake to use the highest possible degree of skill, as there may be persons of higher education and greater advantages than himself; but he undertakes a fair, reasonable, and competent degree of skill, and in an action against him by a patient, the question for the jury is, whether the injury complained of must be referred to a want of a proper degree of skill and care in the defendant or not.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. J. P. Wood, Judge.

29 Cal. App.—21

The facts are stated in the opinion of the court.

R. P. Jennings, and Jennings & Horton, for Appellant.

J. L. Fleming, and W. S. Knott, for Respondent.

SHAW, J.—This is an action to recover damages alleged to have been sustained by plaintiff as the result of negligent surgical treatment administered to him by defendant.

The case was tried by a jury, which rendered a verdict in favor of plaintiff, in accordance with which judgment was entered against defendant in the sum of three thousand five hundred dollars.

The appeal is from the judgment and an order denying defendant's motion for a new trial; his chief contention being that the evidence was insufficient to justify the verdict.

It appears that on January 25, 1911, due to the kick of a horse, the ulna of plaintiff's right arm was broken, and that, after receiving emergency treatment, he, on the day following the injury, placed himself in the care of defendant, who was a physician and surgeon and who undertook the treatment of the injured arm. The negligence of defendant is predicated, not only upon the alleged fact that in setting and treating the fracture there was a lack of care and skill by reason of which the fractured bone failed to unite, but that the bone known as the radius was at the time or at a later date during the treatment dislocated at the elbow, which fact defendant, by reason of his failure to exercise ordinary care and skill, failed to discover or properly treat.

On January 26th, after an examination of the fractured arm with a fluoroscope, defendant set the arm, using splints to retain the broken bones in place. On the following day he discovered that it would be necessary to wire the fractured ends of the bone and had plaintiff go to a hospital, where the operation of wiring was performed by defendant. After the operation, defendant dressed, bandaged, and otherwise treated the arm until March 29th, on which date plaintiff consulted Dr. Rowley, who found a dislocation at the elbow, of the bone known as the radius; that there had been no union of the ends of the fractured bones; that the wire used in securing the same had broken and that pus had developed in the wound; all of which conditions, except the formation of pus in the wound,

were indicated by an X-ray photograph of plaintiff's arm
taken on said last mentioned date. At this time plaintiff
placed himself in the care of Dr. Rowley, who treated the
injured arm until about May 1st, when he and Dr. Lewis
operated upon the arm by cutting off the head of the radius,·
declared necessary in order to reduce the dislocation, and reset
and wired the fractured bone, which, however, as under de-
fendant's treatment, from some cause unknown to Drs. Row-
ley and Lewis and contrary to their expectations, failed to
unite. While plaintiff by his evidence shows in detail just
what defendant did in operating upon the arm and in the
treatment thereof while under his professional care, he pro-
duced no evidence tending to prove that defendant, either in
performing the operation or treatment administered there-
after, was guilty of negligence. The condition of the arm on
March 29th—that is, the dislocation of the radius; the fact
that the wire intended to retain in place the fractured bones
had broken; failure of the fractured bones to unite, and sup-
puration of the wound—was not, in the absence of other proof,
sufficient evidence that there had been a want of ordinary
care and skill on the part of defendant in treating plaintiff's
injuries. In short, the record merely shows what defendant
did in caring for plaintiff professionally, the condition of the
arm existing on and prior to March 29th, when plaintiff
placed himself in the care of Dr. Rowley, and what he and
Dr. Lewis thereafter did professionally to effect a cure. In-
deed, not only is there no evidence of negligence on the part
of defendant, but the evidence of both Dr. Rowley and Dr.
Lewis, who, by the way, were the only witnesses called on
behalf of plaintiff who were competent to testify whether or
not defendant had exercised reasonable care and skill in treat-
ing plaintiff's injury, tends to prove the contrary. This evi-
dence was to the effect that the nature of the fracture was
such as to demand the wiring of the bones, and that the
wire used was such as surgeons generally used in such cases;
that in operating upon the fracture they used like wire, which
in the adjusting thereof likewise broke. Dr. Lewis said:
"After I operated on the bones they did not unite with a
bony union and have never united." And further: "I did
not see anything in the condition of the bones at the fracture,
referring to the location of the holes in which the wires had
been placed or the manner in which the wires were there,

that would indicate that the operation which had been performed by Doctor Dickson was in any way improperly performed. . . . The condition of pus frequently follows an operation, especially operations upon bone. . . . That is true even with the utmost use of surgical care.'' And that he certainly expected, in performing the operation and his wiring of the bones, they would make a perfect union, in which, however, he was disappointed, since the result was to secure a ligamentous union only, and that he did not know what caused such condition.

The implied contract on the part of defendant was, not only that he possessed that reasonable degree of learning and skill possessed by others of his profession, but that he would use reasonable and ordinary care and skill in the application of such knowledge to accomplish the purpose for which he was employed (*Bonnet* v. *Foote,* 47 Colo. 282, [28 L. R. A. (N. S.) 136, 107 Pac. 252]), and if he possessed such reasonable degree of learning, and in the treatment of plaintiff's injury exercised ordinary care and skill in applying it, he is not liable for results that followed. (*Wurdemann* v. *Barnes,* 92 Wis. 206, [66 N. W. 111]; *Sims* v. *Parker,* 41 Ill. App. 284; *Staloch* v. *Holm,* 100 Minn. 276, [9 L. R. A. (N. S.) 712, 111 N. W. 264].) In the absence of evidence to the contrary, the law will presume the exercise of a reasonable degree of care and skill. (*State* v. *Housekeeper,* 70 Md. 162, [14 Am. St. Rep. 340, 2 L. R. A. 587, 16 Atl. 382].) "No presumption of the absence of proper skill and attention arises from the mere fact that the patient does not recover." (*Haire* v. *Reese,* 7 Phila. (Pa.) 138.) "A physician is not a warrantor of cures." (*Ewing* v. *Goode,* 78 Fed. 442.) In *McGraw* v. *Kerr,* 23 Colo. App. 163, [128 Pac. 873], it is said: "Negligence on the part of a physician consists in his doing something which he should not have done, or in omitting to do something which he should have done." Quoting again from *McGraw* v. *Kerr, supra:* "The authorities are practically uniform in holding, . . . that as to what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts, and can be established only by their testimony." Whether or not plaintiff's elbow was dislocated at the time when he first called upon defendant is not disclosed; indeed, there is no evidence as to when the dislocation occurred, or as to what caused it.

It is a subject purely for conjecture. While one witness states that a blow upon the arm, if of sufficient force and in the right direction, might dislocate it, there is no evidence that such blow was given or that the dislocation was caused by the kick of the horse which broke the bone of the arm. Indeed, from aught that appears to the contrary, the dislocation might have been caused by the enfeebled condition of the muscles and ligaments following continued nonuse of the arm and the carrying of it bandaged and in splints. But assuming that it was dislocated at the time when defendant undertook the treatment of the fractured bone, or that it occurred thereafter during the treatment, such fact alone does not show that defendant was lacking in ordinary care and skill in not discovering such condition. No evidence whatever was offered on the part of plaintiff showing that, if it did exist at such time, defendant was negligent in his failure to make such discovery. So far as appears, he was called upon to set the fractured bones. No intimation was given him of any injury to the elbow. Whether or not defendant should, under the circumstances, in the exercise of ordinary and reasonable care and skill, have discovered such condition, assuming it to have existed, was a question for expert testimony, and none was offered. Conceding that Dr. Rowley, as stated by him, had no difficulty on March 29th in discovering the dislocation, nevertheless this fact does not show a want of ordinary care and skill on the part of Dr. Dickson in failing to discover it, since Dr. Rowley, by reason of superior learning and advantages, may have been a man possessing far more than ordinary skill in his profession. In *James* v. *Crockett*, 34 N. B. 540, it is said: ''A surgeon does not undertake to perform a cure, nor does he undertake to use the highest possible degree of skill, as there may be persons of higher education and greater advantages than himself; but he undertakes a fair, reasonable, and competent degree of skill, and in an action against him by a patient, the question for the jury is, whether the injury complained of must be referred to a want of a proper degree of skill and care in the defendant or not.'' To the same effect is *Spain* v. *Burch*, 169 Mo. App. 94, [154 S. W. 172].

The evidence wholly fails to show any lack of care and skill on the part of defendant in setting and treating the fractured bone of plaintiff's arm, and likewise fails to show when the

dislocation of the elbow occurred, or that a physician, in the exercise of ordinary care and skill in treating plaintiff, should, under the circumstances shown, have discovered the dislocation and treated the same.

The judgment and the order denying defendant's motion for a new trial are reversed.

Conrey, P. J., and James, J., concurred.