[L. A. No. 4951.    Department Two.—May 29, 1919.]

## C. W. PERKINS, Respondent, v. W. E. TRUEBLOOD, Appellant.

[1] NEGLIGENCE—MALPRACTICE OF PHYSICIAN—RESETTING BROKEN LEG —EVIDENCE — TREATMENT OF ORIGINAL FRACTURE.—In an action against a physician and surgeon to recover damages for alleged negligence in the performance of a surgical operation upon the plaintiff in resetting a broken leg, evidence relative to the original fracture, its treatment by defendant, and the progress and process of healing was admissible to the end that it might be determined whether or not the methods resorted to by the defendant in resetting the leg were of a nature which an ordinarily skillful surgeon would have given to a leg in such a condition.

[2] ID.—STATUTE OF LIMITATIONS.—Such an action is not barred by subdivision 3 of section 340 of the Code of Civil Procedure where commenced within one year of the date of the resetting, although more than one year after the date of the setting of the original fracture.

[3] ID.—PHYSICIANS AND SURGEONS — PROPER TREATMENT — EXPERT TESTIMONY.—Negligence on the part of a physician consists in his doing something which he should not have done, or in omitting to do something which he should have done, and what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts and can be established only by their testimony.

[4] ID.—LACK OF CARE AND SKILL—INSUFFICIENCY OF EVIDENCE.—In this action it is held the evidence wholly fails to show any lack of care and skill on the part of defendant in setting and treating the fractured bone of plaintiff's leg.

APPEAL from a judgment of the Superior Court of Kern County.  Howard A. Peairs, Judge.  Reversed.

The facts are stated in the opinion of the court.

Stratton & Kaufman, Wm. P. Hubbard and Rowen Irwin for Appellant.

Emmons & Hudson for Respondent.

LENNON, J.—This is an action for damages wherein the plaintiff recovered judgment against the defendant, a physician and surgeon, for alleged negligence in the performance of a surgical operation upon the plaintiff in setting a broken leg. The negligence relied upon for a cause of action is charged in those allegations of the complaint which aver: "That the plaintiff herein by an accident broke his leg during the month of April, 1912. That thereafter the plaintiff employed the defendant who is a surgeon, as such surgeon, for a reasonable reward to be paid therefor, to set and heal the same. That the defendant so negligently and unskillfully conducted himself, in attempting to set said leg of the said plaintiff, that the broken portions of the said leg were not joined and that at both ends of the said fracture the parts overlapped and the same did not heal or become strong, and that subsequently the same leg broke again at the same place without any fault of the said plaintiff." The denial of these allegations, coupled with the defense of the statute of limitations, which was specially pleaded, presented the only issues in the case.

The complaint in the action was filed on April 9, 1913. The court below tried the case without a jury and made its findings in favor of the plaintiff which, in substance, were that the plaintiff broke his leg in March, 1912; that the defendant was employed to reduce the fracture; that the fracture not satisfactorily healing, the defendant separated the surfaces of the bone during the month of April, 1912, and again set the plaintiff's leg; that the defendant performed the latter operation negligently, and that by reason thereof the plaintiff had suffered damage in the sum of $1,250.

The appeal is from the judgment and presents the question of the sufficiency of the evidence to support the findings, and also the question of the correctness of rulings admitting evidence concerning the plaintiff's condition and the defendant's surgical treatment of him prior to April 9, 1912. While the court's findings rested the plaintiff's cause of action upon the defendant's negligent resetting of the plaintiff's leg in April, 1912, nevertheless, it would seem that the trial court

proceeded upon the theory, and correctly so, we think, that the negligence ultimately found against the defendant was dependent in a measure upon the condition of the plaintiff's leg at the time of and subsequent to the setting of the original fracture which the trial court found, and the undisputed evidence shows, occurred in March, 1912. [1] Upon this theory, evidence relative to the original fracture, its treatment, and the progress and process of its healing was admissible to the end that it might be determined whether or not the methods resorted to by the defendant in resetting the leg on or after April 9, 1912, were of a nature which an ordinarily skillful surgeon would have given to a leg in such a condition. [2] This being the theory of the case and the judgment, it follows that there is no merit in the contention that the commencement of the action was barred by subdivision 3 of section 340 of the Code of Civil Procedure.

The plaintiff's case, as revealed by the evidence, seems to rest upon the contention that as a result of the defendant's negligent treatment of the fractured leg on and after April 9, 1912, he was caused great physical pain and suffering, that he could not pursue his usual vocation by reason of the fact that he did not have the full use of the leg, and that some ten months later the same leg was again broken in the same place in a fall which would not have fractured the leg if it had been properly treated by the defendant upon the occasion of the second setting. In this connection, it will be noted that in spite of the great suffering and financial loss claimed to have been endured by the plaintiff for a period of ten months following the last treatment by the defendant, it affirmatively appears that the defendant was not requested to give any further treatment and that the plaintiff failed to place himself under the care of any other surgeon. Moreover, apart from the testimony of Dr. Rogers that the plaintiff said that the second fracture was caused by a fall of three or four feet on an oil rig, and the testimony of the plaintiff that he did not fall over twelve inches, there is no evidence of any circumstance preceding or attending the fall. In view of the fact that a person may snap a perfectly sound leg in a fall of twelve inches or less, the claim that the defendant's negligence was the proximate cause of the second fracture finds, to say the least, very slight support from the facts revealed by the record. Upon this analysis of the case, we find it difficult

to consider seriously the claims advanced by the plaintiff. Nevertheless, the trial court has entered its findings in favor of those claims, and we shall review the evidence adduced upon the whole case in order to determine whether it is sufficient to support the findings.

The only evidence which appears to support the finding that the surfaces of the bones were separated in April, 1912, is found in the testimony of Dr. C. A. Rogers. Upon being handed an X-ray photograph of the leg, taken on April 28, or April 29, 1912, Dr. Rogers remarked that inasmuch as no sign of a callous appeared he should judge that the leg had been set very recently—a few days' prior to the date of the photograph. A callous is a formation of new bony tissue found between and around the fractured ends of a broken bone in the process of reuniting, and we must infer from Dr. Rogers' testimony that, if it forms at all, it begins to show in an X-ray photograph within a few days after the process of reuniting begins. Therefore, the fact that Dr. Rogers saw no sign of a callous in the photograph taken on April 28, or April 29, 1912, merely tends to show that no callous was ever formed around the break in question prior to that date. But that fact, if true, cannot serve as the basis for the further inference that a setting of the leg took place a few days prior to the date of the photograph. That this must be so appears from the undisputed fact that the plaintiff originally broke his leg on March 6, 1912, and that it was set on the following day. Since it necessarily follows from Dr. Rogers' testimony that no callous formation appeared at all or at any time after that setting and prior to the date of the photograph, the absence of a callous cannot be taken to indicate a resetting a few days prior to April 28, or April 29, 1912.

But even assuming that the evidence supports the findings that the defendant separated the surfaces of the fractured bone and reset the leg in April, 1912, still we are of the opinion that the evidence does not show that the defendant failed to use reasonable prudence and skill in performing that operation or in treating the leg thereafter. It is true that there is some evidence which tends to show that at the time of the fall and the second fracture the ends of the broken bone overlapped nearly one-half of an inch, and that there was no complete bony union prior to the treatment of another

physician for the final fracture resulting from the fall. In the absence, however, of a showing that such a condition would have been at least improbable had the leg received reasonably prudent and ordinarily skillful surgical treatment, it cannot be said that the mere pathological condition of the leg in and of itself sufficed to show negligence on the part of the defendant in resetting the leg. "The difficulties and uncertainties in the practice of medicine and surgery are such that no practitioner can be required to guarantee results and all the law demands is that he bring and apply to the case in hand that degree of skill, care, knowledge and attention ordinarily possessed and exercised by practitioners of the medical profession under like circumstances." (*Zoterell* v. *Repp,* 187 Mich. 330, [153 N. W. 695].)

With respect to the failure to attain a complete bony union, the plaintiff's experts themselves testified that there was no way for an average or even a skilled surgeon to tell whether ligamentous or bony tissue was being deposited between and around the fractured ends of a broken bone in the process of reuniting without opening the wound. While Dr. C. A. Rogers testified that it was good surgery to open the wound and staple the bone, especially where, as here, there was an oblique fracture, none of the experts gave it as their opinion that it was not good practice to rely altogether upon casts and splints as did the defendant in the instant case.

Concerning the overlapping, the plaintiff's expert, Dr. C. A. Rogers, said: "Sometimes you will have a bone slip with the best in putting on splints any way." Again, referring to the break treated by the defendant, he said: "The break runs obliquely as distinguished from straight across. Where a bone is broken in that form, it is absolutely as a general proposition in surgery, more difficult to set that bone in place and hold it in place, than where it goes straight across. We do not expect to get a perfect alignment of the bone where the character of the break is such as was this bone." Dr. Homer Rogers added: "It is more difficult to reduce a fracture of that character than in reducing a transverse fracture. I would not insure that the reduction of a fracture of the character in question would be perfect." None of the experts gave it as their opinion that the use of reasonable care and skill would have insured a more perfect reduction.

It follows from the foregoing analysis of the evidence that negligence on the part of the defendant must be predicated, if at all, upon some act or omission in the course of the treatment of the fracture by the defendant shown to have been imprudent or unskillful. There is no direct testimony to the effect that the surfaces of the bone were in fact separated during the month of April. There is, therefore, no direct testimony as to the method adopted by the defendant in aligning the bones and reducing the fracture at that time, even assuming that he did make an attempt to realign the bones and reduce the fracture anew. In the absence of evidence, it cannot be assumed that he proceeded, if he proceeded at all, without ordinary care or skill. It will be necessary, therefore, upon this view of the case, to confine our attention to a consideration of the acts of the defendant as to which there is evidence in the record. It appears that a plaster of paris cast was put on the leg on April 9, 1912, that another cast was put on on April 12th, and possibly another on April 17th, that the cast was removed on April 25th, and that a yucca splint was then put on and held in place by a light bandage. The following testimony of the defendant concerning the circumstances attending and following the treatment of April 25, 1912, is uncontradicted: ''I put on what is called a yucca splint—a splint made from material gotten from the yucca plant for that particular purpose. I put that on and bandaged, and the patient wanted to go to the ranch, I believe the Panama ranch, and I told him he could go by being careful and using his crutch all the time, keeping the splint on for about two weeks from the time that I put it on. . . . I did not see him any more for some time as he went to the Panama ranch, or some place else, I don't know where. . . . I do not remember of having seen him between that and the time I saw him in April [July], as in the mean time I had gone south on a vacation, and he knew I was going. I told him if this thing didn't go right to go on to Dr. Kellogg, or some doctor, to see to it for him during my absence.'' There is no evidence to show that he was thereafter called upon to give any further treatment or to take any further responsibility in the case. There was no testimony of any expert witness who said that anything covered by this treatment was improper, or that there was anything lacking in the treatment which would have been included by a reasonably prudent and skillful surgeon.

[3]   In *McGraw* v. *Kerr,* 23 Colo. App. 163, [128 Pac. 873],
it is said: "Negligence on the part of a physician consists in
his doing something which he should not have done, or in
omitting to do something which he should have done." Quot-
ing further from the same case: "The authorities are
practically uniform in holding, . . . that as to what is or is
not proper practice in examination and treatment, or the
usual practice and treatment, is a question for experts, and
can be established only by their testimony." (See, also,
*Houghton* v. *Dickson,* 29 Cal. App. 321, [155 Pac. 128]; *Hesler*
v. *California Hospital Co.,* 178 Cal. 764, [174 Pac. 654].)

[4]   The evidence wholly fails to show any lack of care
and skill on the part of defendant in setting and treating the
fractured bone of plaintiff's leg.

The judgment appealed from is reversed and the case re-
manded for a new trial.

Wilbur, J., and Melvin, J., concurred.