[Civ. No. 2438. Fourth Appellate District.—December 21, 1939.]

IVA McNAMARA et al., Appellants, v. CALVERT L. EM-
MONS et al., Respondents.

ᴄ

A. Brigham Rose for Appellants.

Swing & Swing for Respondents.

MARKS, J.—This is an action for damages resulting to plaintiffs from the alleged negligence of Dr. Walter A. Sullivan, an employee of Dr. Calvert L. Emmons, in treating Mrs. Iva McNamara. Plaintiffs are husband and wife.

The amended complaint contains two causes of action. The first is for the recovery of damages suffered by Mrs. McNamara as a result of the alleged malpractice and the second for the recovery of damages suffered by Mr. McNamara consisting of the value of loss of services of his wife and the expenses incurred by reason of her protracted and serious illness. The negligence alleged and relied upon consists (1) in the failure of Dr. Sullivan to exercise ordinary care to prevent the infection of a wound suffered by Mrs. McNamara and (2) failure of defendants to leave their offices in Ontario and go to San Bernardino (or Colton) and treat Mrs. McNamara when requested to do so by her husband.

The case was tried before a jury which returned a verdict for defendants on evidence that was flatly contradictory.

For a reversal of the judgment plaintiffs principally rely on eight instructions which they maintain were erroneous and the fact that the instructions were read to the jury by the courtroom clerk rather than by the judge.

The propriety of instructions depends largely on the evidence in the particular case in which they were given, as the trial judge is only required to instruct on questions of law that relate to the issues presented by the pleadings and the evidence. It is necessary, therefore, for us to give a brief summary of that portion of the evidence supporting the verdict and judgment, disregarding conflicts. The briefs of plaintiffs are entirely barren of any quotations from the evidence or summary of it with sufficient references to the reporter's transcript. They also fail to quote in full any of the challenged instructions or any other instructions bearing on the same subjects. There is also a failure on the part of plaintiffs to state the substance of the pleadings. (See, sec. 953a, Code Civ. Proc.; rule VIII, Rules for the Supreme Court and District Courts of Appeal.)

Dr. Emmons was a duly licensed and practicing physician and surgeon with offices in the city of Ontario. During the time involved here he employed Dr. Sullivan, also a licensed and practicing physician and surgeon, as his assistant. It was not their custom to accept or treat a case which would

require a journey of more than about eight miles beyond the city limits of the city of Ontario. Dr. Emmons' office was fully equipped for the care and treatment of patients that did not require immediate hospitalization. He lived a few blocks from his office, but did not treat patients at his home where there were no supplies, instruments or equipment necessary for such treatments. Dr. Sullivan also lived a few blocks from the office.

Plaintiffs lived at the place of business of Mr. McNamara in Ontario. He was a glazier. At about 10 o'clock on the night of August 10, 1937, Mrs. McNamara received a cut about two inches long and between one-half and one inch deep in the calf of her leg, from a projecting piece of glass. The wound bled profusely. Mr. McNamara wrapped her leg in bath towels and took her to the residence of Dr. Emmons for treatment. Dr. Emmons was then taking a bath preparatory to retiring. He did not see Mrs. McNamara, who remained in her husband's automobile which was parked in the street in front of the house.; He instructed Mr. McNamara to take his wife to the office and told him that either Dr. Emmons or his assistant would go to the office and care for the cut. He immediately called Dr. Sullivan, who had retired for the night, and requested him to go to the office as soon as possible to render first aid to Mrs. McNamara. Dr. Sullivan reached the office in about 10 minutes after this phone call and conducted plaintiffs into the surgical treatment room. He placed Mrs. McNamara on an operating table and removed the bath towels from her leg to observe the extent of the bleeding which had practically stopped at that time. He washed and sterilized his hands, put on a sterile gown and secured the necessary sterile instruments and other paraphernalia with which to proceed with his task. He placed all of these in a container filled with alcohol and poured alcohol over his hands. He dipped cotton in alcohol and washed the outside of the wound and surrounding skin of the leg. He probed the wound for particles of glass which he did not find. He sterilized the wound, administered a local anaesthetic and sewed it up. He then dressed the wound with sterile dressings and bandages. He told Mrs. McNamara to stay off her injured leg as much as possible and to return to the office the following day. He made out a memorandum of the treatment for the office records and the three then left

the office.   According to the testimony of Dr. Sullivan, every-thing about this operation was surgically clean.   It is signifi-cant that no physician who testified offered the slightest criticism of this treatment nor the manner in which it was done, as it was described by Dr. Sullivan.

A few minutes after Mr. and Mrs. McNamara returned from the physicians' offices to their Ontario home they decided to go to Mr. McNamara's brother's home on the boundary line between San Bernardino and Colton.   We will hereafter assume that this home was in San Bernardino.   It was about twenty miles distant from Ontario.   Mr. McNamara did not take his wife to the defendants' offices on August 11th as di-rected by Dr. Sullivan, nor thereafter.   Neither defendant saw Mrs. McNamara after the first aid treatment administered by Dr. Sullivan on the night of August 10th.

August 11th was a holiday for Dr. Sullivan on which he was not expected to and did not report to the office nor care for patients.   During the night of August 11, 1937, Mr. Mc-Namara telephoned Dr. Sullivan from San Bernardino tell-ing him that Mrs. McNamara was in considerable pain.   Dr. Sullivan recommended certain home treatments.   No physician who testified thought these recommended home treatments improper.

Between 9 and 10 o'clock on the morning of August 12th Mr. McNamara called the home of Dr. Sullivan by telephone. The doctor was absent and was either attending patients in a hospital or at their homes.   McNamara talked to Mrs. Sulli-van who immediately left word of the call with the telephone girl at the doctors' office.

Both defendants reached their offices at about 10:30 on the morning of August 12th.   A few minutes later a long dis-tance call came in from Mr. McNamara to Dr. Sullivan who answered it.   McNamara described Mrs. McNamara's condi-tion to Dr. Sullivan and asked him to go to San Bernardino to see her.   Before this telephone conversation was completed with Dr. Sullivan, Dr. Emmons took it over and completed it.   He explained to Mr. McNamara the impracticability of an Ontario physician assuming the care of patients in San Ber-nardino and "discouraged" McNamara's plan of having Dr. Sullivan continue the treatment.   He advised the calling of a San Bernardino physician and offered to do so.   Mr. Mc-Namara concurred in this suggestion and Dr. Emmons im-

mediately telephoned a physician in San Bernardino, of excellent standing and explained the case to him. This physician agreed to make the call as soon as he had finished with the patients who were then in his office. Dr. Emmons immediately communicated these facts to Mr. McNamara who was satisfied with these arrangements

The condition of Mrs. McNamara became rapidly worse. Shortly before 1 o'clock in the afternoon of August 12th Mr. McNamara called another San Bernardino physician who immediately responded to the call. He found the wound infected and symptoms of what laymen call blood-poisoning. Shortly after the arrival of this physician the one called by Dr. Emmons reached the house. He did not see Mrs. McNamara as he was told that another physician had been called and was in charge of the case.

Mrs. McNamara was removed to a hospital where she remained until November 18th, 1937. She was very seriously ill. This illness was caused by infection in the wound in her leg.

The relation of physician and patient is, in its inception, created by contract either express or implied. The contract may be general or may be limited by special terms. When general, the physician may undertake the treatment of a patient during the course of an illness wherever the patient may be. A physician is under no obligation to enter into such a general contract for such treatment of a patient. He may limit his obligation by undertaking to treat the patient only for a certain ailment or injury at a certain place and at a specified time. When he so limits his employment the physician is not required to treat his patient at another place nor to follow him into another city. (*Urrutia* v. *Patino*, (Tex. Civ. App.) 297 S. W. 512; *Nash* v. *Royster*, 189 N. C. 408 [127 S. E. 356]; *Childers* v. *Frye*, 201 N. C. 42 [158 S. E. 744]; *Nelson* v. *Farrish*, 143 Minn. 368 [173 N. W. 715].)

In speaking of a contract of employment of a physician in *Roos* v. *Jansen*, 30 Cal. App. (2d) (Supp.) 773 [78 Pac. (2d) 476], it was said:

"In the absence of a special agreement as to the place where a contract is to be performed, it is to be deemed performable at the creditor's place of business, *Bank of Yolo* v. *Sperry Flour Co.*, (1903) 141 Cal. 314 [74 Pac. 855, 65

L. R. A. 90] (applying secs. 1488 and 1489, Civ. Code); *Kaupke* v. *Lemoore etc. Co.*, (1935) 7 Cal. App. (2d) 362 [46 Pac. (2d) 204], or, in the absence of a contrary showing, a contract is to be deemed performable where it is made. (*Fitzhugh* v. *University Realty Co.*, (1920) 46 Cal. App. 198, 201 [188 Pac. 1023]; *Southwestern Portland Cement Co.* v. *Cochrane*, (1931) 114 Cal. App. (Supp.) 778, 781 [300 Pac. 445].)"

It is thoroughly settled in California that "In the absence of an express contract the physician or surgeon does not warrant cures. By taking a case he represents that he possesses the ordinary training and skill possessed by physicians and surgeons practicing in the same or similar communities and that he will employ such training, care and skill in the treatment of his patients. (*Patterson* v. *Marcus*, 203 Cal. 550 [265 Pac. 222]; *Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654]; *Houghton* v. *Dickson*, 29 Cal. App. 321 [155 Pac. 128]; *Priestley* v. *Stafford*, 30 Cal. App. 523 [158 Pac. 776]; *McCollum* v. *Barr*, 38 Cal. App. 411 [176 Pac. 463].)" (*McLennan* v. *Holder*, 1 Cal. App. (2d) 305, 314 [36 Pac. (2d) 448].)

It is equally well settled in California that what is or what is not the proper practice of a physician and surgeon in the treatment of a case is "a question for experts, and can be established only by their testimony". (*McLennan* v. *Holder, supra*; *Perkins* v. *Trueblood*, 180 Cal. 437 [181 Pac. 642]; *Ingamells* v. *Goodfellow*, 109 Cal. App. 62 [292 Pac. 162]; *Roberts* v. *Parker*, 121 Cal. App. 264 [8 Pac. (2d) 908]; *National Automobile Ins. Co.* v. *Industrial Acc. Com.*, 132 Cal. App. 373 [22 Pac. (2d) 568].)

Plaintiffs complain of four instructions which in effect told the jury that as the contract to treat Mrs. McNamara was made in Ontario it would follow that it was to be performed there and that in the absence of proof of a contract to treat her elsewhere, or a general contract for treatment until she was cured, or in San Bernardino or wherever she might be, there was no obligation on the part of the defendants to follow her to San Bernardino, and treat her there. One of the defenses interposed was that the contract of employment was special and was limited to the treatment of Mrs. McNamara in the offices of defendants in Ontario. There was considerable evidence admitted in support of this

defense. Defendants were entitled to proper instructions on this phase of the case. There was no error in giving these instructions.

Plaintiffs complain of an instruction which informed the jury that "Whether any or all of the alleged conditions (of Mrs. McNamara) were brought about by the alleged negligence of defendants can only be determined from the testimony of expert witnesses, that is, from doctors or surgeons . . . " This instruction was proper under the facts of this case and the authorities already cited.

One instruction given contained the following: "in addition thereto, the burden is also upon the plaintiffs to establish by a preponderance of all the evidence that the alleged condition of Mrs. McNamara was a direct and proximate *cause* of the alleged negligence." This portion of the instruction is admittedly erroneous. It is clear that instead of the word "cause" which we have italicized, the word "result" should have been used. That this is a typographical error seems clear. In two other sentences of the same instruction it was clearly stated that in order to permit a recovery by plaintiffs the suffering of Mrs. McNamara must have been proximately caused by the negligence of defendants. These correct statements were repeated numerous times elsewhere in the instructions. It is hardly probable that the jury could have been misled by the erroneous use of the word "cause" in the quoted portion of the instruction.

The trial judge instructed the jury at least twice in effect that plaintiffs must prove their case by a preponderance of all *competent* evidence and also that they must prove all *material* facts necessary to make out their case.

We regard the use of words "competent" and "material" in these instructions as erroneous. It is the duty of the trial judge to rule on objections to the introduction of evidence and to exclude incompetent and immaterial evidence. What evidence falls within those classifications is a question of law to be decided by the trial judge. In a case of this kind questions of law should not be passed on to the jury for decision. (See *Holt Mfg. Co.* v. *Collins,* 154 Cal. 265 [97 Pac. 516]; *Tabler* v. *Harlin,* 106 Cal. App. 74 [288 Pac. 823]; *LeBlond* v. *Townsley,* 108 Cal. App. 81 [290 Pac. 1051].)

The effect of erroneous instructions to a jury must be weighed under the provisions of section 4½ of article VI of the Constitution. It is only when such errors actually prejudice the rights of a party that we can reverse a judgment.

We have studied the entire record carefully and seriously doubt our ability to have sustained a judgment for plaintiffs had one been rendered.

As we have already seen, it is thoroughly settled in California that physicians and surgeons are only required, in treating a patient, to possess and use the ordinary training, care and skill of other ordinarily prudent, careful and skillful physicians and surgeons practicing in the same or similar communities. It is equally well settled that the standards of practice in a community can only be established by the testimony of experts. No physician or surgeon, other than defendants, who was familiar with the standards of practice in Ontario, testified in the case, and defendants were not interrogated on this subject. Plaintiffs produced two physicians as witnesses who had never practiced in Ontario and knew nothing of the standards of practice there. Neither did they know that the communities of Ontario and San Bernardino, where they practiced, were similar or had similar standards of practice. Over the strenuous objections of defendants they were permitted to testify as to the standards of practice in San Bernardino. They were not able to testify that the same standards prevailed in Ontario. It seems clear that this evidence was incompetent for any purpose. It should not have been received and cannot supply the important defect in the case of plaintiffs and could not prove that defendants did not use due care in treating Mrs. McNamara, in accordance with the standards of practice prevailing in Ontario. Without proof of the lack of such due care, plaintiffs made out no case. Therefore, we believe that the instructions we are considering, while erroneous, were not prejudicial to plaintiffs.

Plaintiffs urge that the trial judge committed error in permitting the courtroom clerk to read the instructions to the jury rather than to read them himself. The record shows that no objection was made to this procedure or the manner in which the instructions were read by the clerk. Plaintiffs should not be permitted to urge this error here for the first

time. By failing to object in the trial court we must hold that they waived any such error.

Other questions argued have no merit and do not need particular consideration.

Plaintiffs have attempted to appeal from the order denying their motion for new trial. Such an order is not appealable. (Sec. 963, Code Civ. Proc.)

The judgment is affirmed and the attempted appeal from the order is dismissed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1940.