## CIRCUIT COURT OF THE CITY OF WINCHESTER

Nancy S. Johnson

v.

James H. Stafford, Adm'r c.t.a
of the Estate of John E. Cross

August 27, 1993

Case No. (Law) 91–278

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Motion for Summary Judgment of the Defendant who claims immunity from liability for malpractice pursuant to Virginia Code § 54.1–106 because the physician's services were rendered at a free medical clinic without charge and that Defendant's decedent was not guilty of gross negligence or willful misconduct. Upon consideration of the Memorandum of Law and the argument of counsel, the Court has made the following decision to partially grant the Motion for Summary Judgment.

### I. *Findings of Fact*

The following facts are established in the record in this case.

On June 8, 1989, the Plaintiff who was then age 42 went to The Free Medical Clinic of the Northern Shenandoah Valley, Inc., which was then operating a cancer diagnosis van. The Free Medical Clinic of Northern Shenandoah Valley, Inc., is a nonprofit organization which provides free medical services to indigents.

While at The Free Medical Clinic, Mrs. Johnson complained of a lump on her vulva and was examined by Dr. John E. Cross, an obstetrician and gynecologist, who had donated his services free of charge to The Free Medical Clinic.

As a condition of her treatment at The Free Medical Clinic, Mrs. Johnson executed an American Cancer Society Care-a-Van screening project patient registration form, Johnson deposition Exhibit 2, which stated, among other things, that:

It is understood that the said Society and/or its participating members are under no obligation to treat any condition so discovered. If a condition exists and is not discovered, the said Society and/or each of its participating members shall not be held liable in any way.

The protocol of The Free Medical Clinic provided in June, 1989, that:

Accepting a free medical clinic referral means that the referral physician agrees to see the patient without charging them for the initial visit. After that it is up to the referral physician as to whether or not he/she will continue to see the patient or proceed with treatment, etc.

The Care-a-Van patient checkout form, Johnson deposition Exhibit 2, indicates that Mrs. Johnson was found to be suffering from a Bartholin Cyst on her vulva which Dr. Cross recommended be removed surgically in his office. Johnson deposition, page 11. On July 10, 1989, Dr. Cross excised the cyst in his office at no charge. Johnson deposition, page 13. A considerable substance was removed from the cyst, and no biopsy or analysis of the substance was performed. Johnson deposition, page 15.

On July 12, 1989, Mrs. Johnson returned to Dr. Cross's office, and he examined the cyst. On July 17, 1989, Mrs. Johnson was again seen by Dr. Cross, and he removed the suture from the area where he had drained the left Bartholin Cyst. On August 22, 1989, Mrs. Johnson returned to Dr. Cross's office and was examined by him for a follow-up visit at which time another appointment was scheduled for October 2, 1989.

Dr. Cross rendered all of his services to Mrs. Johnson in this matter free of charge incident to his first seeing her at the Free Clinic.

Mrs. Johnson failed to keep the October 2, 1989, appointment. Mrs. Johnson called the office and spoke to an unidentified woman in this office whom she told that she still had a lump which was bothering her. In this conversation, she was told that Dr. Cross had completed his services incident to her visit at The Free Medical Clinic and that, if further services were required, she would have to pay his private fee or alternatively to go to the emergency room and be examined there. Johnson deposition, pages 18–19.

On March 16, 1990, Mrs. Johnson again called Dr. Cross's office and reported that the lump was getting larger and inquired as to whether anything could be done about it. Johnson deposition, page 20. Again, the conversation was with a woman who advised her that they would be glad to see her if she would be a paying patient. Johnson deposition, page 21. Dr. Cross's chart of March 16, 1990, reflects that a call was received along with a note recommending that Mrs. Johnson go to the emergency room for drainage.

Following her March 16, 1990, telephone call to Dr. Cross's office, Mrs. Johnson received instructions to go to the emergency room to have her cyst examined by the OB/GYN physician who was then on call. Mrs. Johnson did not go to the emergency room and did not seek medical attention for the cyst until July, 1990. Mrs. Johnson later had additional surgery at the same site as Dr. Cross by another OB/GYN physician so it would appear that further medical treatment was necessary for her condition in the period from October through March, 1990.

## II. *Conclusions of Law*

The entry of summary judgment is governed by Supreme Court Rule 3:18. "Upon considering a motion for summary judgment, the Court must rule, as a matter of law, on the sufficiency of the evidence; it does not weigh the evidence as a finder of fact. Accordingly, the Court must draw those inferences most favorable to the non-moving party." *Pilland Corp. v. League Construction*, 238 Va. 187, 189–190, 380 S.E.2d 652 (1989).

Rather than blanketly granting immunity to physicians who provide services free of charge to indigents, Virginia has chosen to statutorily enact the Good Samaritan doctrine in various factual situations. *See* Virginia Code § 8.01–225 (persons rendering emergency care); Virginia Code § 8.01–225.1 (immunity for athletic team physicians); and Virginia Code § 54.1–106, immunity for practitioners at free medical clinics who volunteer their services. The latter section potentially applies here. Virginia Code § 54.1–106 as it existed until July 1, 1992, provided that:

> No person who is licensed by the Boards of . . . Medicine . . . who renders services within the limits of his license . . . voluntarily without compensation to any person at any clinic . . . for delivery of health care services without charge, shall be

liable for any civil damages or any act or omission resulting from the rendering of such services unless the act or omission was a result of his gross negligence or willful misconduct.

On July 1, 1992, the statute was changed deleting the phrase "at any clinic" inserting the phrase "at any site," which the plaintiff claims limits the shield of immunity to only acts physically committed on the free medical clinic premises. If a statute is clear and unambiguous, a court will give the statute its plain meaning. *Loudoun County Dept. of Soc. Serv. v. Etzold*, 245 Va. 80, 425 S.E.2d 800 (1993). Neither party claims that the immunity statute is ambiguous, therefore, the Court must assume the General Assembly intended the phrase "to any person at any clinic which is organized in whole or in part for the delivery of health care services without charge . . ." to convey its ordinary meaning. At is a "function word to indicate means . . . or manner . . . ." *Webster's New Collegiate Dictionary* (1975). The preposition was used in § 54.1–106 to limit the liability to the clinic where the service was performed. If this were not the case, it would not have been necessary for the General Assembly to subsequently amend the statute in 1992 to expand its provisions to include services rendered "at any site." However, the word "clinic" is used ninety-five times in the Code of Virginia without definition and in varying contexts. *See, e.g.,* § 8.01–225 (medical clinic); § 14.1–112 (outpatient clinic); § 18.2–119 (driver improvement clinic); and § 18.2–502.1 (weight loss clinic). *Webster's New Collegiate Dictionary* (1975) defines clinic as "a facility for diagnosis and treatment of outpatients." This is clearly the meaning given the term by the General Assembly in § 54.1–106. Moreover, § 54.1–106 is a remedial statute. "Remedial statutes are to be construed liberally to remedy the mischief to which they are directed in accordance with the legislature's intended purpose." *Carmel v. City of Hampton*, 241 Va. 457, 460, 403 S.E.2d 335 (1991). Dr. Cross continued to treat Mrs. Johnson at his office free of charge, so his medical office was at a clinic "organized . . . in part for the delivery of health care services without charge . . . ." Therefore, the provisions of Virginia Code § 54.1–106 do apply to the services which Dr. Cross rendered in his office, and he can only be held liable if he was guilty of gross negligence or willful misconduct.

"After a physician has accepted employment in a case, it is his duty to continue services as long as they are necessary. He cannot voluntarily abandon his patient." *Vann v. Harden*, 187 Va. 555, 565, 47

S.E.2d 314 (1948). The *Vann* court went on to note that "even if personal attention is no longer necessary in the treatment of an injury, if the case and circumstances call for it, the physician must furnish the patient with instructions as to proper care, and failure to do so might become actionable negligence." *Id.* at 565–566. The standard of care has not been yet established in this case, and that is a matter of fact. In paragraph four of her amended motion for judgment, the plaintiff claims that the defendant "neither provided nor recommended additional treatment or diagnostic tests, and Defendant did not examine Plaintiff, and this was gross negligence." This would appear to remain a genuine issue, and if the gross negligence is proven in the treatment, it remains a genuine issue of fact as to whether the instructions which were given incident to the alleged termination of treatment rise to the level of gross negligence, and the Court cannot make that determination based upon the present record in this case.

In *Lyons v. Greather*, 218 Va. 630, 633–634, 239 S.E.2d 103 (1977), the Supreme Court of Virginia stated:

> A physician's duty arises only upon the creation of a physician-patient relationship; that relationship springs from a consensual transaction, a contract, express or implied, general or special, *McNamara v. Emmons*, 36 Cal. App. 2d 199, 204–05, 97 P.2d 503, 507 (1939); and a patient is entitled to damages resulting from a breach of a physician's duty. *See* 61 Am. Jur. 2d, *Physicians, Surgeons, Etc.*, § 96 (1972); 70 C.J.S., *Physicians and Surgeons*, §§ 37, 38 (1951). Whether a physician-patient relationship is created is a question of fact, turning upon a determination whether the patient entrusted his treatment to the physician and the physician accepted the case. *Parkell v. Fitzporter*, 301 Mo. 217, 256 S.W. 239 (1923); *Hansen v. Pock*, 57 Mont. 51, 187 P. 282 (1920); *Peterson v. Phelps*, 123 Minn. 319, 143 N.W. 793 (1913) . . . .
>
> We consider next how a physician-patient relationship, once created, may be lawfully terminated.
>
> As a general rule, unless the services to be rendered are conditioned or limited by notice or by the terms of employment, the physician-patient relationship continues until the services are no longer needed, *Vann v. Harden*, 187 Va. 555, 565, 47 S.E.2d 314, 319 (1948); however, the relationship may be terminated earlier by mutual consent or by the unilat-

eral action of the patient; and under certain circumstances, the physician has a right to withdraw from a case, provided the patient is afforded a reasonable opportunity to acquire the services he needs from another physician. *See* Annot., 57 A.L.R. 2d 432, 439, § 3 (1958).

It appears that the Plaintiff, Mrs. Johnson, says the reason she did not go back to see Dr. Cross after she missed her October, 1989, scheduled appointment was because she had been treated rudely. Johnson deposition, pages 27–28. In this case, it appears clearly from the record that by agreeing to treat Mrs. Johnson at his office that Dr. Cross did undertake to treat her for the Bartholin Cyst at no cost. From the facts of this case viewed most favorably to the Plaintiff at this juncture, it would appear that additional treatment was probably required in October, 1989, for Mrs. Johnson, and that having undertaken initially to treat the condition voluntarily, Dr. Cross would have been required to continue treatment unless he then terminated it by providing the patient with sufficient notice to allow her to procure alternative treatment. The sufficiency of notice is an issue of fact which requires further factual development in this case.

"Defining the defendant's duty of care is the first step in determining liability. A second step involves determining whether the conduct alleged . . . amounts to the degree of deviation from that duty — simple or gross negligence, willful and wanton conduct, or intentional misconduct — requisite to establish civil liability in the circumstances of the case." *National R. R. Passenger Corp. v. Catlett Fire Co.*, 241 Va. 402, 412, 404 S.E.2d 222 (1991). The standard of care and departure from that standard have to be determined in this case. Gross negligence is "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971). Whether Dr. Cross's treatment was grossly negligence is still an issue which the Plaintiff must prove, and there is genuine issue of fact on this point.

### III. *Decision*

For the foregoing reasons, the Motion for Summary Judgment is granted, insofar as any acts of simple negligence are concerned pursu-

ant to Virginia Code § 54.1–106, and the Motion for Summary Judgment is denied, insofar as any willful misconduct or gross negligence which may be proven by the Plaintiff is concerned.